## SECURITY UNION INS. CO. v. McCLURKIN.

### No. 9490.

Court of Civil Appeals of Texas. Galveston.
Dec. 26, 1930.

Rehearing Denied Jan. 29, 1931.

PLEASANTS, C. J.

For brevity, the parties will be hereinafter designated appellant and appellee.

The following succinct and clear statement of the nature and result of this suit is copied from appellant's brief:

"This suit was instituted by the appellee in the district court of Grimes County, Texas, appealing from an award of the Industrial Accident Board previously made and entered. The suit therefore is one brought under the statutory act known as the Workmen's Compensation Act, and the rights and remedies of the respective parties controlled by that act. No question arises in the cause as to the jurisdiction of the trial court over the subject matter or parties—the jurisdictional prerequisites having been alleged and established.

"In his suit the appellee alleged that he was an employee of the Western Public Service Company—a subscriber under the Workmen's Compensation Act of the State of Texas; that the Insurance Company (appellant) was the insurer of the liability imposed upon the employer under said act; that he was injured while acting in the scope of his employment and entitled therefore to compensation from the appellant by reason of such fact. His wage was sufficient to entitle him to maximum weekly compensation of $20.00 per week.

"The appellee asked judgment for medical and hospital attention and expense aggregating $440.85, for compensation in the amount of $340.00 for total disability for a period of 17 weeks, and for $6000.00 by reason of partial incapacity, same being calculated at the rate of $20.00 per week for 300 weeks. (The defendant answered by general demurrer and a number of special exceptions, the nature of which, so far as they may be relevant to the questions decided in this opinion, will be hereinafter indicated, and by a general denial.)

"The case was tried before the court without a jury upon an agreed statement of facts, and judgment was rendered in favor of appellee and against the appellant in the aggregate amount of $2449.25."

Under the first proposition presented in appellant's brief it is earnestly and forcibly urged that the injury sustained by appellee was not upon the facts of this case one which is compensable under the provisions of the Workmen's Compensation Act of this state.

The following is taken from the agreed facts upon which the case was tried in the court below:

"That at the time of the injury, plaintiff was Division Superintendent of the Sales Department for the Western Public Service Company for the Navasota Division, and was in such employment, located and domiciled at Navasota, Texas; that in connection with his

King, Battaile & Dutton and John F. Battaile, all of Houston, for plaintiff in error.

Ralph W. Barry and J. B. Leigh, both of Navasota, for defendant in error.

duties he was required to travel to the different towns in the Navasota Division which comprised several counties; that his duties in the main were the general superintending of sales and supervising all services incident to such sales; that while performing his usual duties it was customary for plaintiff to be out of Navasota and his office for four or five days per week and that in getting to and from these respective places in his territory he used an automobile furnished him by his company; that for the purpose of the Company's convenience, the company had installed at plaintiff's home a telephone which was carried in the name of the plaintiff but the bills for such telephone services were paid by plaintiff's employer; that at the time Mr. McClurkin was injured by running the needle into his foot he had just completed conversation from said telephone in connection with his employer's business, as hereinafter stated.

"That on the morning of May 31st, 1928, at or about 8:30 A. M., plaintiff, L. C. McClurkin, was aroused from his sleep at home by his wife to answer a long distance telephone call. That said telephone call was from Mr. Hereford. Superintendent of the Conroe Plant of the Western Public Service Company, situated about fifty miles from Navasota; that after completing conversation with Mr. Hereford over the telephone, plaintiff turned from the telephone and stepped on a needle which was on the floor at or near the telephone, sticking same into the ball of right foot, the eye of the needle striking one of the bones of plaintiff's foot and said needle was broken off and lodged in the flesh of plaintiff's foot, resulting in .a painful injury. That in discharging the duties of his employment, plaintiff was detained from his home until 2:30 A. M. of the morning of May 31, 1928. As a result of the injury aforesaid, the plaintiff was confined to his bed for a period of eight days and to his home for seven days additional, returning to his office on June 15th; that from June 15th to July 11th, plaintiff worked at his office of his employer at Navasota, Texas, but not doing the work he was customarily engaged in; that during said period he could only work approximately one-half a day each day; that on July 11th the injury to his foot became very painful and a serious infection having set in and upon the advice of Dr. Harris of Navasota (Insurance Company Dr. S. D. Coleman being out of town and services not available), the plaintiff went to Houston to his father-in-law's home where Dr. Priester was awaiting him, who immediately made an examination of plaintiff's foot and after probing and draining, he recommended an operation."

We cannot agree with appellant in the contention that the injury received by appellee in the circumstances shown by the agreed facts before set out was not compensable under our statute. The rule of the English courts to the effect that the only risk against which the English Workmen's Compensation Law affords protection, is one which is a necessary concomitant of the occupation the workman is engaged in is not the rule established by the courts of this state in the construction of our Workmen's Compensation Act.

■■ As we understand the decisions of our courts, an injury may originate in the work of the employee engaged in the furtherance of the business of his employer when the risk of the injury is not a necessary concomitant of the work. If the risk is incidentally attendant upon work in furtherance of the employer's business and does not come within the exceptions contained in section 1, art. 8309, the employee is protected by our statute.

Section 1, art. 8309, of our Revised Statutes (1925), provides:

"The term 'injury sustained in the course of employment,' as used in this law, shall not include:

"1. An injury caused by the act of God, unless the employee is at the time engaged in the performance of duties that subject him to a greater hazard from the act of God responsible for the injury than ordinarily applies to the general public.

"2. An injury caused by an act of a third person intended to injure the employee because of reasons personal to him and not directed against him as an employee, or because of his employment.

"3. An injury received while in a state of intoxication.

"4. An injury caused by the employee's willful intention and attempt to injure himself, or to unlawfully injure some other person but shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere."

■ In going to the telephone, placed in his apartment by his employer for the purpose of communicating with him, to answer a call from his employer, the appellee was performing the duties of his employment and furthering the business of his employer, and the injury received by him in answering the call was one having to do with and originating in the work or business of his employer. The risk or hazard taken by appellee in answering the call was taken in order to perform the duties of his employment, and the injury caused thereby is compensable under the article above quoted. The fact that the injury occurred in appellee's apartment, and that the needle upon which he stepped was probably dropped there by some member of his family, does not affect the question. When his employer placed the phone in appellee's apartment and made it appellee's duty to answer its

calls at all times, appellee in the performance of the duties of his employment was required to take all reasonable risks in answering the call, and the statute intended to protect him against such risk. Pace v. Appanoose County; 184 Iowa, 498, 168 N. W. 916, 918. In the case cited the Supreme Court of Iowa says: "What the law intends is to protect the employee against the risk or hazard taken in order to perform the master's task."

In the case of Procaccino v. Horton & Sons, 95 Conn. 408, 111 A. 594, 595, in which an employee was injured while crossing private property on the way to his place of work, which way of approach to the employer's place of business the court found was contemplated by the employer would be used by its employees, the Supreme Court of Connecticut said: "When this employee, under the facts found, entered upon the private property lying between Main street and the defendants' plant, he came within the zone of his employment, and all dangers and perils incident to the use of this method of approach were perils incident to and arising out of his employment."

These extracts from the cited cases are copied and approved by our Supreme Court in the able and exhaustive opinion of Justice Greenwood in the case of Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S. W. 72, 28 A. L. R. 1402.

It seems to us that the case presented by this record cannot be distinguishable from a case in which an employee is injured in the performance of the duties of his employment at or in the place of business of his employer. In neither case can the contributory negligence of the employee be considered nor is there any exception to his right to compensation other than those contained in the statute before cited. When appellee's employer required him to answer its calls over the phone placed by it in appellee's apartment at any time, day or night, it contemplated that in answering the calls appellee would subject himself to the risks and hazards incident thereto and would be entitled to compensation for any injury so received not excepted from compensation by the statute.

It has been uniformly held by our courts, that the statute, being remedial in its character, should be liberally construed so as to give full effect to its benign purpose and intendment. Under this rule any reasonable doubt which may arise in a particular case as to the right of the injured employee to compensation should be solved in favor of such right. The cases of Employers' Liability Assurance Corporation v. Light (Tex. Civ. App.) 275 S. W. 685, Associated Indemnity Corporation v. Wilson (Tex. Civ. App.) 21 S.W.(2d) 314, and Federal Surety Company v. Ragle (Tex. Civ. App.) 25 S.W.(2d) 898, all tend to support our conclusion that the injuries sustained by appellee are compensable under our statute. The case of Insurance Company v. Burnett (Tex. Com. App.) 283 S. W. 783, 784, cited by appellants, is easily distinguishable from the case presented by this record. In the Burnett Case the plaintiff, who had returned from a hunting trip, was injured in removing a loaded gun from his automobile in which he was starting a trip in furtherance of the business of his employer. In removing the gun which he had left in his car on his return from his hunting trip, it was accidentally discharged and caused the injury for which he sought compensation. In deciding the Burnett Case, the Commission of Appeals, with the approval of the Supreme Court, held: "Burnett was injured in his attempt to remove from his automobile his gun placed there by him for the purpose of shooting doves. The purpose of having the gun in the car had to do only with his dove hunting. It had nothing to do with, and was an incident apart from, any work he was doing for his employer. The injury caused by his attempt to remove the gun did not result from a risk or hazard incident to the business of selling baking powders. This injury had nothing to do with and did not originate in his employer's business, and hence is not such injury as is contemplated by the statute."

It seems to us the soundness of this holding cannot be questioned, but that it has no application to the facts of the instant case.

The appellant next assails the judgment on the ground that it awards appellee items of compensation not allowed under the statute. The first items of compensation complained of and the grounds of complaint as to each are thus stated in appellant's brief:

"(a) $140 for 7 weeks' total disability;

"(b) $173 for 10 weeks' partial disability at $17.30 per week; and

"(c) $6.92 per week for a period of 200 weeks, account of 20% permanent partial incapacity;

"Is erroneous,

"(a) Because under the law compensation for a specific injury is in lieu of all other compensation, and the amount of $140 total disability is excluded therefore under the provision of the law;

"(b) Because the allowance by the trial court of $17.30 per week for 10 weeks is an arbitrary finding and judgment of the court, having no evidence in the record upon which such judgment could be based, and is not authorized under the Compensation Act where the specific injury clause is applicable; and

"(c) Because there is no evidence in the record warranting judgment for $6.92 per week for 200 weeks' permanent partial incapacity, and such judgment is therefore arbitrary and not supported by any evidence and unauthorized under the law where the court allows compensation for a specific injury to the toe under section 12, article 8306, Revised Civil

Statutes 1925, and said injury to the toe is not complicated by any other injury."

The facts as to the nature and extent of appellee's injuries are thus stated in the record:

"Plaintiff turned from the telephone and stepped on a needle which was on the floor at or near the telephone, sticking same into the ball of his right foot, the eye of the needle striking one of the bones of plaintiff's foot and said needle was broken off and lodged in the flesh of plaintiff's foot resulting in a painful injury. * * * As a result of the injury aforesaid, the plaintiff was confined to his bed for a period of eight days and to his home for seven days additional, returning to his office on June 15th; that from June 15th to July 11th, plaintiff worked at the office of his employer at Navasota, Texas, but not doing the work he was customarily engaged in; that during the said period he would only work approximately one half a day each day; that on July 11th, the injury to his foot became very painful and a serious infection having set in and upon the advice of Dr. Harris of Navasota, (Insurance Company Dr. S. D. Coleman being out of town and services not available) the plaintiff went to Houston to his father-in-law's home where Dr. Priester was awaiting him, who immediately made an examination of plaintiff's foot and after probing and draining, he recommended an operation. Plaintiff arrived at his father-in-law's home about 8:30 at night. Dr. Priester recommended that the plaintiff go to the Baptist Hospital the following morning for X-ray examination of the foot, which plaintiff did; that said X-ray examination was made at Baptist Hospital and following said examination Dr. Priester recommended immediate operation on said foot for the purpose of scraping the bone and removing from it decayed bone and sloughed off tissues; that the plaintiff thereupon took a room in the Baptist Hospital on the morning of July 12th and the operation was performed. * * *

"At the time of the injury above named, plaintiff was Division Superintendent of the Sales Department for the Western Public Service Company for the Navasota Division, and was in such employment, located and domiciled at Navasota, Texas; that in connection with his duties he was required to travel to the different towns in the Navasota Division which comprised several counties; that his duties in the main were the general superintending of sales and supervising all services incident to such sales; that while performing his usual duties it was customary for defendant to be out of Navasota and his office for four or five days per week, and that in getting to and from these respective places in his territory he used an automobile furnished him by his company."

Further quoting from agreed statement of facts: "That as the result of said injury plaintiff has an ankylosis in a favorable position of the great toe of the right foot, this resulting in a disability of 30–35 percent as applied to the great toe which will be permanent; that at the present time when plaintiff has occasion to drive his car for as much as one-half day, at times the scar on his foot becomes tender and he has to relieve pressure on the foot which was injured." It will be noted that the injury was received on May 31, 1928, and that the agreed statement of facts is dated the 10th day of July, 1929, practically fourteen months after the injury, and that at said time plaintiff still suffered pain from the scar on his injured foot.

■ We cannot agree with appellant's contention that, because appellee claimed and was allowed compensation for permanent partial injury to his toe, he was not entitled to recover any additional compensation under the provision of section 12, art. 8306, of the statute, which declares that the compensation therein allowed for the loss of specific members of the body shall be in lieu of all other compensation. It has been expressly held that this provision does not apply to partial injuries to different members of the body, but that the following provision in the same section of article 8306 of the statute is applicable in such case: "Where the employee sustains concurrent injuries resulting in concurrent incapacities, he shall receive compensation only for the injury which produces the longest period of incapacity; but this section shall not affect liability for the concurrent loss or the loss of the use thereof of more than one member, for which, member compensation is provided in this schedule, compensation for specific injuries under this law shall be cumulative as to time and not concurrent." Texas Employers' Ins. Association v. Morena (Tex. Com. App.) 277 S. W. 84.

The facts disclosed by the record bring the case clearly within the rule laid down in the Morena Case. Appellee pleaded, and the agreed statement of facts upon which the case was tried shows, that the needle which caused his injury was stuck in the ball of his foot, and the injury to his foot was his primary injury; the injury to his toe having been thereafter caused by the infection in his foot.

■■ It is, we think, clear upon this state of facts that appellee is entitled to recover for both the injury to his foot and the subsequent and resulting permanent partial injury to his toe. We think the facts are sufficient to sustain the finding of the court that, as a result of his injury, appellee suffered a total disability for a period of seven weeks. The first period of such disability did not last for seven weeks, but, after his foot became infected and he was forced to go to a hospital for its treatment, the period of such disability was extended to seven weeks or more.

We also think the agreed facts sustain the judgment awarding appellee $173 for ten weeks' partial disability. That appellee was partially incapacitated from performing his work during the ten weeks immediately succeeding the period of his total disability is shown by the agreed facts, and this diminution in his capacity to perform his work was 20 per cent., as shown by the record. The allowance of $17.50 per week for this incapacity is not in excess of 20 per cent. of his average weekly wages as shown by the record.

We are not prepared to hold that the facts are insufficient to sustain the court's finding that appellee was entitled to recover the item of $6.92 for 200 weeks for partial disability. The injury to his foot and the operation performed thereon were of such serious nature that it had not ceased to give him pain and partially incapacitated him for his work up to the time of the trial, which was more than a year after his injury, and we cannot say, in the absence of any conflicting facts, that the court was not authorized to find that the injury was permanent.

With the exception hereinafter shown, we think appellant's objection to the several items of damages awarded the appellee by the judgment are based upon an erroneous conception of the case made by the pleadings and the agreed facts. Appellee's claim for compensation is not based solely upon the permanent injury to his toe, but upon the injury to his foot and the resultant permanent partial injury to his toe. In a case of this kind we think the court in fixing the amount of recovery properly followed the statute in regard to concurrent injuries. to different members of the body, and all of the allowances made by the court should be sustained except the allowance of $440.85 for medical services and hospital fees incurred by appellee when his foot became infected after he had returned to work. Under section 7, art. 8306, appellant could not be held liable for these fees which the record fails to show were incurred with the consent or knowledge of appellant.

The judgment will be reformed by striking this item therefrom, and, as so reformed, will be affirmed.